FILED

2014 AUG -7 P 12: 10

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| AVESHKA, INC.<br><br>4075 Wilson Boulevard, Suite 800<br>Arlington, VA 22203<br><br>Plaintiff,<br><br>vs.<br><br>GLOBAL RECORD SYSTEMS, LLC<br><br>2101 Gaither Road, Suite 450<br>Rockville, MD 20850<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No. 1:14cv1006<br>)                                   GBL/IDD<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

Plaintiff, Aveshka, Inc. ("Aveshka"), brings this action against the Defendant, Global Record Systems, LLC ("GRS"), and in support thereof respectfully states as follows:

### JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 in that there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. Venue in this District is proper pursuant to 28 U.S.C. § 1391(b)(2).

### PARTIES

3. Aveshka is a Virginia corporation having its principal place of business in the Commonwealth of Virginia.

4. GRS is a Delaware limited liability company having its principal place of business in the State of Maryland. To the best knowledge of Aveshka, no member of GRS is a citizen of the Commonwealth of Virginia.

## FACTUAL ALLEGATIONS

5. Aveshka is a technology firm that provides professional services in the fields of information technology, cybersecurity and analytics solutions, as well as policy, planning and preparedness.

6. GRS is a technology firm that provides information technology services for various patients, physicians and other health care stakeholders.

7. GRS transacted business in the Commonwealth of Virginia with regard to the matters that are the subject of this Complaint. Among other things: (i) GRS personnel met with various Aveshka personnel at Aveshka's offices in Arlington County, Virginia on a number of occassions regarding the matters that are the subject of this Complaint, including meetings held on November 5, 2012; November 12, 2012; December 4, 2012; December 7, 2012; and February 14, 2013; (ii) the letter of credit required by the Convertible Promissory Note that is the subject of Count I of this Complaint was obtained and issued by Xenith Bank, a Virginia banking company that only has offices within Virginia; (iii) the Master Services Agreement that is the subject of Count III of this Complaint not only required Aveshka to provide its services in Virginia, but it also expressly provides for Virginia jurisdiction and venue (*see,* Paragraph 12.8 thereof); and (iv) multiple emails and other communications, including certain payments, were sent by GRS to Aveshka in Virginia.

8. Aveshka and GRS entered into and executed the following three (3) agreements:

(i) Convertible Promissory Note ("Note") dated October 31, 2012, a true copy of which is attached hereto as Exhibit 1 and incorporated herein by this reference;

(ii) Security Agreement ("Security Agreement") dated October 31, 2012, a true copy of which is attached hereto as Exhibit 2 and incorporated herein by this reference; and

(iii) Master Services Agreement ("MSA") dated February 25, 2013, as well as a related Statement of Work ("SOW") dated February 14, 2013. A true copy of that MSA and related SOW is attached hereto as collective Exhibit 3 and incorporated herein by this reference. Among other things, the MSA expressly provides for Virginia venue and jurisdiction (*see*, Paragraph 12.8), as well as attorneys' fees to the prevailing party in any action (*see*, Paragraph 12.11).

9. Pursuant to the Note, Aveshka, through a series of wire transfers from Xenith Bank to GRS starting in November of 2012 and continuing until April of 2013, loaned and advanced Two Million Five Hundred Thousand Dollars ($2,500,000.00) to GRS.

10. Aveshka remains the holder of the Note. Although Aveshka has the right under the Note to convert the Note into an equity interest in GRS, Aveshka has never exercised that right. Accordingly, the Note remains in full force and effect.

**Non-payment of the Note**

11. Pursuant to the Note, GRS is required to pay interest semi-annually at the rate of eight percent (8%) per annum. The semi-annual dues dates for such interest payments are April 30 and October 31.

12. Although GRS initially made the required interest payments to Aveshka under the Note, GRS failed to pay the required interest payment that was due on April 30, 2014.

13. The details of the aforesaid April, 2014 interest payment were set forth in a spreadsheet emailed by Aveshka to GRS on April 21, 2014. A true copy of that April 21 email and its attached spreadsheet are attached hereto as Exhibit 4 and incorporated herein by this reference.

14. Pursuant to the Note, an Event of Default occurs thereunder if GRS fails to pay any principal or interest as and when due and such nonpayment continues uncured for a period of five (5) business days after written notice from Aveshka (*see* Para. 6(c) of the Note).

15. By letter dated June 6, 2014, Aveshka sent formal Notice of Default to GRS. A true copy of Aveshka's default notice is attached hereto as Exhibit 5 and incorporated herein by this reference.

16. GRS failed to cure the default outlined in the attached Exhibit 5 and such failure continued for more than five (5) business days after the date of Aveshka's default notice.

17. By letter dated June 28, 2014, Aveshka, by and through its counsel, sent a second formal Notice of Default to GRS, which included additional demands under the Note, the Security Agreement and the MSA/SOW. A true copy of that second default notice, with attached certified mail receipts and email transmittal, is attached hereto as Exhibit 6 and incorporated herein by this reference. Said second default notice was sent in accordance with the terms of the Note, the Security Agreement and the MSA/SOW.

18. GRS failed to cure the defaults or to comply with the demands outlined in the attached Exhibit 6, which failure continued for more than five (5) business days (and with regard to the MSA/SOW, more than ten (10) days) after the date of Aveshka's aforesaid second default notice.

19. Pursuant to the Note, because GRS did not pay the overdue interest payment within the specified cure period, the entire principal sum of the Note, as well as all accrued and unpaid interest thereon, became immediately due and payable.

20. For removal of any doubt, by letter dated July 30, 2014, Aveshka, by and through its counsel, sent another formal Notice to GRS, which, without waiving the terms of the Note, advised GRS that after five (5) business days from the date of said Notice, Aveshka intended to declare the obligations remaining under the Note immediately due and payable, and to have the remedies of a secured party under the annotated Code of Maryland. A true copy of that Notice, with attached certified mail receipts, fax confirmation sheets and email transmittal, is attached hereto as Exhibit 7 and incorporated herein by this reference. Said Notice was sent in accordance with the terms of the Note, the Security Agreement and the MSA/SOW.

21. By letter dated August 7, 2014, Aveshka, by and through its counsel, sent formal Notice to GRS, which, without waiving the terms of the Note, advised GRS that Aveshka declared the obligations remaining under the Note immediately due and payable, and to have the remedies of a secured party under the annotated Code of Maryland. A true copy of that Notice, which was transmitted by facsimile and email as stated thereon, is attached hereto as Exhibit 8 and incorporated herein by this reference.

### Breach of the Security Agreement

22. Pursuant to the Security Agreement, an Event of Default under the Note also constitutes an Event of Default under the Security Agreement (*see* Paragraph 4).

23. Aveshka properly recorded a UCC financing statement with regard to the Security Agreement. A true copy of that financing statement is attached hereto as Exhibit 9 and incorporated herein by this reference.

24. As the result of GRS's breaches of and non-compliance with the terms of the Note and Security Agreement, Aveshka is entitled to the rights and remedies of a secured creditor whose debtor is in default.

25. Pursuant to Paragraphs 6 and 10 of the Security Agreement, Aveshka is also entitled to recover its attorneys' fees and Court costs in this action.

26. The Security Agreement includes a personal guarantee of Sandra Garrett (excluding primary residence) for satisfaction by Ms. Garrett for the remaining value of the Note should the collateral not cover the $2.5 million value of the Note. Nothing in this Complaint or pursuit of this action waives, modifies or relinquishes the aforesaid personal guarantee of Ms. Garrett.

### Non-payment of the amounts due under the MSA

27. Aveshka invoiced GRS for Aveshka's services under the MSA. GRS paid the first invoice issued by Aveshka. As to the second invoice, GRS issued its check #1402 to Aveshka, but GRS's check was returned for insufficient funds. True copies of Aveshka's invoices, Aveshka's statement of account-A/R listing and the chargeback notice regarding GRS's bounced check [partially redacted to the extent required by Fed. R. Civ. Pro. 5.2 and Local Civil Rule 7(c)] are attached hereto as collective Exhibit 10 and incorporated herein by this reference.

### The additional "fee" agreed to by GRS

28. In May of 2014, GRS requested additional time to pay both the overdue interest on the Note, as well as the amount of GRS's aforesaid check #1402. As reflected in the email exchange that is attached hereto as Exhibit 11 and incorporated herein by this reference, Aveshka and GRS agreed to extend the time for making both such payments, but failing non-

payment of the the amount of GRS's aforesaid check # 1402 by April 30, 2014, then both such payments were due on May 31, 2014, together with an additional 10% fee. Because GRS failed to make the aforesaid payment by April 30, 2014, both payments were due on May 31, 2014 plus the additional 10% fee. The amounts due from GRS to Aveshka as of May 31, 2014 are detailed in the spreadsheet that is included in the attached Exhibit 11.

29. GRS's breaches of and non-compliance with the terms of the Note, the Security Agreement and the MSA/SOW have caused loss and damage to Aveshka.

## COUNT I
### Non-payment of Sums Due Under the Convertible Promissory Note

30. The matters and allegations set forth in Paragraphs 1 – 29 above, inclusive, are repeated and incorporated herein.

31. As of May 31, 2014, the sums due and payable by GRS to Aveshka under the Note are as follows:

(i) $2,500,000.00 unpaid principal;

(ii) $115,616.44 unpaid accrued interest;

(iii) $16,039.34 for the agreed upon 10% fee; and

(iii) interest at the rate of $547.95 per day from June 1, 2014 until paid in full.

WHEREFORE, Aveshka respectfully requests that judgment be entered in its favor against GRS for the amounts set forth in Paragraph 31, above, plus the amount of Aveshka's attorneys' fees and Court or other costs incurred in connection with this action, together with such other and further relief as this Court deems appropriate.

## COUNT II
## Breach of and Non-Compliance with Security Agreement

32. The matters and allegations set forth in Paragraphs 1 – 31 above, inclusive, are repeated and incorporated herein.

33. GRS has failed and/or refused to make the collateral that is the subject of the Security Agreement available to Aveshka, or to allow Aveshka to take control of it.

34. Under MD Code Comm Law 9-609, Aveshka may, via judicial process, take and obtain possession of the collateral covered by the Security Agreement.

35. Aveshka presently has no means to obtain possession of the aforesaid collateral, and is thus without an adequate legal remedy other that a judicial order to enforce Aveshka's status as a secured party whose debtor is now in default.

WHEREFORE, Aveshka respectfully requests that judgment be entered in its favor against GRS for the amounts set forth in Paragraph 31, above, together with the amount of Aveshka's attorneys' fees and Court or other costs incurred in connection with this action, plus an order that GRS be required to assemble and make available to Aveshka all of the collateral covered by the Security Agreement at the offices of Aveshka, or alternatively, at any place the Court finds to be reasonably convenient to both parties, together with such other and further relief as this Court deems appropriate.

## COUNT III
## Breach of and Non-Compliance with Master Services Agreement

36. The matters and allegations set forth in Paragraphs 1 – 29 above, inclusive, are repeated and incorporated herein.

37. Aveshka provided its services to GRS in a professional, satisfactory and workmanlike manner and in accordance with the MSA and SOW, which services were accepted by GRS.

38. The failure of GRS to pay the sums due under the MSA and SOW constitutes a breach of the MSA and SOW, which has damaged Aveshka.

WHEREFORE, Aveshka respectfully requests that judgment be entered in its favor against GRS in the amount of $44,777.00, plus the amount of Aveshka's attorneys' fees and Court or other costs incurred in connection with this action, together with such other and further relief as this Court deems appropriate.

Respectfully submitted,
Aveshka, Inc.
By Counsel

/s/ Michael C. Montavon
Michael C. Montavon, VSB #16928
MICHAEL C. MONTAVON, P.C.
P.O. Box 496
Clifton, VA 20124-0496
703.352.2550
703.995.0277 (fax)
mcm@montavonlaw.com
Co-counsel for Aveshka, Inc.

/s/ Marc A. Busman
Marc A. Busman, VSB #13030
BUSMAN & BUSMAN, P.C.
P.O. Box 7514
Fairfax Station, VA 22039
703.503.8088
703.425.8487 (fax)
mbusman@busmanandbusman.com
Co-counsel for Aveshka, Inc.