**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **AVESHKA, INC.** | : | |
| **Plaintiff,** | : | |
| **v.** | : | **Civil Action No. 1:14-cv-01006 GBL-IDD** |
| **GLOBAL RECORD SYSTEMS, LLC** | : | |
| **Defendant** | : | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS, OR, IN THE ALTERNATIVE, STAY COUNT III**

COMES NOW Plaintiff, Aveshka, Inc. ("Aveshka"), by counsel, and states the following as and for its Opposition to Defendant's Motion to Dismiss, or, In The Alternative, Stay Count III.

## SUMMARY

By its motion, Defendant seeks to elevate form over substance, and to require the parties to perform a truly unnecessary act. The substance of Count III of the Complaint is a garden-variety collection action. Aveshka performed services, and Defendant issued checks in payment for them. The only problem is that the last check from Defendant bounced. Numerous efforts by Aveshka to obtain payment failed. To suggest that an in-person meeting between the parties is required for Count III[1] to proceed is, at best, a legal nicety, devoid of any material value.

## STANDARD OF REVIEW

Aveshka concurs with Defendant's statements as to the standard of review with respect to a Rule 12(b)(6) motion.

[1] Of course, Defendant's motion is limited to Count III. Counts I and II remain unaffected.

## THE COMPLAINT'S ALLEGATIONS

The parties entered into 3 agreements: a loan, a security agreement, and a services agreement, each of which Defendant breached. Complaint, ¶¶ 3, 30-38. As to Count III, Defendant does not deny the authenticity of the services agreement (Ex. 3 to the Complaint). *See,* Answer, ¶8. Aveshka performed its services properly thereunder; invoiced for them; and received checks from Defendant for the full amounts due. Complaint, ¶ 27, 37.

Defendant's motion does not deny that the foregoing states a claim. Rather, Defendant argues there is a condition precedent to litigation here – and seizes on language in the services agreement that provides that the parties "will attempt to resolve any claim, or dispute or controversy . . . through face-to-face negotiation . . . or mediation rather than through litigation."

## SUPPLEMENTAL FACTS

To support its motion, GRS submitted the Declaration of it CEO, Ms. Sandra Garrett. Despite the numerous demands for payment outlined in the Complaint - - which Defendant does not dispute (*see* Complaint, ¶¶ 15, 17, 21 and Defendant's Answer thereto) - - Ms. Garrett's Declaration merely states that *Aveshka* did not ask for face-to-face negotiation or mediation. Her Declaration is tellingly silent as to whether, despite the multiple payment demands from Aveshka, Defendant ever made such a request…what is also clear is that Defendant did not insist upon any face-to-face negotiation…at least prior to Defendant's payment/attempted payment for said services.

As supplemental facts to Paragraphs 8(iii), 27, 37, and 38 of the Complaint, Plaintiff has attached the following Declarations:

A. Declaration of Raymond McIlwain, Vice President, Contracts and General Counsel

of Aveshka, Inc., with respect to the completion and partial payment of Plaintiff's services provided to Defendant pursuant to the Master Services Agreement (the "MSA") and Statement of Work (the "SOW") there under, Exhibit 3 to the Complaint. Two invoices for the completed services were submitted to Defendant, and Payment of the $15,480.00 invoice was made in part by Defendant's check dated 3/1/2013 which cleared Defendant's bank, but Defendant's other check for payment of the $44,777.00 invoice was dishonored by Defendant's bank for insufficient funds. No claim, dispute or controversy was raised by Defendant, nor was any notice of defect and request for correction or adjustment given by Defendant as to the quality, timeliness, or any other aspect of Plaintiff's performance of said services or regarding Plaintiff's billing therefore.

B. Declaration of Girish Jindia, President of Aveshka, Inc, with respect to the emails and communications between Sandra Garrett, Managing Member of Global Record Systems, LLC, and himself in which Defendant's non-payment of the Note and dishonored check for payment of Plaintiff's services to Defendant were discussed and that no resolution by and between the chief executives of the Plaintiff and Defendant was reached. Furthermore, in no communication or at no time did Ms. Garrett raise any issue of dispute or controversy, or any claim by Defendant against Plaintiff as to the services performed by Plaintiff for Defendant, and in fact, Ms. Garrett affirmatively stated that Defendant intended to pay Plaintiff for said services. See attachment to said Declaration, 1st page Sandra Garrett email dated 8/9/2014 "….Our goal is to pay off your obligation in full…"

C. Declaration of Michael C. Montavon, Esquire, co-counsel for Aveshka, Inc., with

respect to emails and other communications he had with Michael L. Zuppone, Esquire, counsel for Global Record Systems, LLC, as to demand by Plaintiff to Defendant for the sums which are sought in this Complaint, and the email and telephonic settlement negotiations which counsel for each of the parties had, both prior to the filing of the Complaint, which negotiations were unsuccessful in resolving Defendant's non-payment of the sums demanded by Plaintiff.

## ARGUMENT

### 1. There is no "dispute" to be negotiated.

The attached Declarations amply demonstrate that Aveshka provided its services to Defendant; two invoices for the completed services were submitted to Defendant; payment of the first $15,480.00 invoice was made by Defendant's 3/1/2013 check; and Defendant's other check for payment of the $44,777.00 invoice was dishonored by Defendant's bank for insufficient funds. No claim, dispute or controversy was raised by Defendant, nor was any notice of defect or request for correction or adjustment ever given by Defendant as to the quality, timeliness, or any other aspect of Aveshka's performance of said services.

To the contrary, Defendant's own CEO acknowledged the validity of the subject debt in writing. Prior to filing the Complaint, Aveshka's counsel was in communication with Defendant's counsel. During that process, and in response to Aveshka's request, Ms. Garrett provided a written "report" regarding "*payment of [the] outstanding invoice for services*" and other matters. Emphasis added. Letter from Ms. Garrett dated July 16, 2014 (attached to Mr. Montavon's Declaration)[2]. Unquestionably, that letter is plea for forebearance, and an

[2] While Rule 408 of the Federal Rules of Evidence normally precludes introduction of compromise offers and negotiations, the Comments make clear that, for the prohibition to apply, there first must be a dispute. "The policy considerations which underlie the rule do not come into play when the effort is to induce a creditor to settle an

unmistakable promise of "meeting all of [the] outstanding service . . . obligations due to Aveshka and will pay them immediately once the new capital is raised."

Likewise, the post-Complaint email dated August 9, 2014 from Ms. Garrett to Aveshka's CEO is to the same effect. For forebearance, she proffers "payment now of the past due interest, the penalty and the services fee." There is no "dispute" at all raised.

Like the policy considerations regarding Rule 408, there is no meaningful point to require "negotiation" of an admitted debt. Absent a *bona fide* dispute, the alleged negotiation requirement in the services agreement is not a condition precedent – it is a stalling tactic.

**2. Defendant fails to acknowledge the actuality of events and the validity of electronic communications.**

As shown by the attached Declarations, there was unquestionably "negotiation" between the parties and their respective counsel prior to the filing of the Complaint. Defendant's point is limited to the technical one of those negotiations allegedly not being "face-to-face."

First, "face-to-face" cannot be read or interpreted literally. Parties do not (and should not be compelled to) actually place their respective faces physically against one another during negotiations.

Second, *Merriam-Webster's Online Dictionary* defines "face-to-face" as "1: within each other's sight *or presence* <met and talked face-to-face> <a face-to-face consultation> and 2: In or into direct contact or confrontation <the men came face-to-face with the problem.> (Emphasis added.) *See,* http://www.merriam-webster.com/dictionary/face-to-face. There were multiple instances of direct communications here – they were simply done by phone and email.

---

admittedly due amount for a lesser sum. McCormick §251, p. 540. Hence the rule requires that the claim be disputed as to either validity or amount."

(Does Defendant seriously argue that if the parties were all blind, a "face-to-face" meeting could never occur?)

Third, Virginia law[3] validates electronic communications. Virginia's Uniform Electronic Transactions Act provides in pertinent part as follows (emphasis added):

> **§ 59.1-480. Definitions. —** As used in this chapter: …
>
> (13) "Record" means information that is inscribed on a tangible medium *or that is stored in an electronic or other medium and is retrievable in perceivable form.*
>
> **§ 59.1-483. Use of electronic records and electronic signatures; variation by agreement. —**
>
> (b) This chapter applies only to transactions between parties each of which has agreed to conduct transactions by electronic means. *Whether the parties agree to conduct a transaction by electronic means is determined from the context and surrounding circumstances, including the parties' conduct.* Except for a separate and optional agreement the primary purpose of which is to authorize a transaction to be conducted by electronic means, an agreement to conduct a transaction electronically may not be contained in a standard form contract unless that term is conspicuously displayed and separately consented to. An agreement to conduct a transaction electronically may not be inferred solely from the fact that a party has used electronic means to pay an account or register a purchase warranty. This subsection may not be varied by agreement.
>
> **§ 59.1-485. Legal recognition of electronic records, electronic signatures, and electronic contracts. —**
>
> (a) *A record* or signature *may not be denied legal effect or enforceability solely because it is in electronic form.*

By choice, the parties and their respective counsel communicated as they did - - electronically. Stated simply, Defendant wants to deny the legal effect of those electronic communications. Doing so is not permitted under Virginia law.

Fourth, Defendant has not and cannot in good faith establish that any additional discussions, communications, negotiations or meetings (which do not include the actual payment of the amount due and owing) would resolve the issues set forth in Count III. Any requirement to cause the parties herein to conduct further meetings, discussions, or negotiations would be

[3] The services agreement is governed by Virginia law. *See, ¶12.8.*

useless. There is no good reason for requiring any such further activity, and the law does not require a useless act. *See, Monroe Inc v. Cowne*, 133 Va. 181, 112 S.E. 848, 855 (1922).

**3. Defendant waived any "right" to "face-to face" negotiation.**

It is axiomatic that waiver is the voluntary, intentional abandonment of a known legal right, advantage or privilege. *Weidman v. Babcocki*, 241 Va. 40, 400 S.E.2d 164 (1991). Here, Defendant waived any "right" to an in-person negotiation session. Defendant - - a sophisticated entity using its sophisticated New York law firm - - conducted pre-litigation communications electronically. There is no record evidence before this Court showing that Defendant demanded any other form of communication or "negotiation" as to the sums due under Count III. Through its voluntary and intentional conduct, Defendant waived any "right" to now rely on Section 12.8 of the services agreement.

As an aside, it is interesting to note that the authorities cited by Defendant in support of its third Argument (failure to satisfy a condition precedent) pertain to a **mandatory negotiation/mediation condition precedent** [emphasis added] which is not the situation in this matter. Mandatory arbitration or mediation requires the services of a compensated neutral third party professional in a formal proceeding rather than the very informal "face-to-face" negotiation solely between the parties which Defendant seeks to have the Court impose here. Given Defendant's lack of any authorities cited (as well as our own inability to find any) in a factual scenario involving mandatory informal face to face negotiation solely by the parties, the Court should consider the burden upon Plaintiff to show waiver in this scenario to be clearly less than in the usual arbitration/mediation scenario: Plaintiff has clearly demonstrated by facts and argument stated above that it has met its burden in showing that the Defendant has waived any right to demand face-to-face negotiation in view of personal conversations between the parties'

principals and the emails and correspondence between the principals and the parties' authorized representatives.

## CONCLUSION

Defendant's motion seeks either a dismissal without prejudice as to Count III, or a short stay of it to allow a "face-to-face negotiation" to occur. There is no legitimate material reason - - perhaps other than delay - - to do either one. Defendant's motion should be denied.

Respectfully submitted,

AVESHKA, INC.
By Counsel

/s/ Marc A. Busman

Michael C. Montavon, VSB #16928
MICHAEL C. MONTAVON, P.C.
P. O. Box 496
Clifton, VA 20124-0496
703.352.3550
703.995.0277 (fax)
mcm@montavonlaw.com
*Co-Counsel for Aveshka, Inc.*

Marc A. Busman, VSB #13030
BUSMAN & BUSMAN, P.C.
P. O. Box 7514
Fairfax Station, VA 22039
703.503.8088
703.425.8487 (fax)
mbusmanandbusman.com
*Co-Counsel for Aveshka, Inc.*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 23rd day of September, 2014, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

Stephen D. Charnoff, Esquire
REES BROOME, PC
1900 Gallows Road, Suite 700
Tysons Corner, VA 22182
(703) 790-1911
(703) 356-0527 (fax)
scharnoff@reesbroome.com
Counsel for Defendant Global Record Systems, LLC

/s/ Marc A. Busman

Marc A. Busman, Esquire, VSB #13030
*Co-Counsel for Aveshka, Inc.*
BUSMAN & BUSMAN, P.C.
P. O. Box 7514
Fairfax Station, VA 22039
703.503.8088
703.425.8487 (fax)
mbusmanandbusman.com

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **AVESHKA, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 1:14-cv-1006** |
| | ) | **GBL/IDD** |
| **GLOBAL RECORD SYSTEMS, LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DECLARATION OF RAYMOND MCILWAIN**

I, Raymond McIlwain, declare as follows:

1. I am the Vice President Contracts-General Counsel of the Plaintiff, Aveshka, Inc. ("Aveshka") in this action and am over the age of 18 years.

2. The Statement of Work referred to in Paragraph 8(iii) of the Complaint was terminated by mutual letter agreement of the parties effective March 4, 2013 (copy attached ) as to the eCast Stabilization Task Order dated February 25, 2013, and no further services were performed by Plaintiff for Defendant (also "Global") after said date.

3. That prior to the mutual letter of termination dated March 6, 2013, Plaintiff had performed services in accordance with the Statement of Work (the "SOW") to the Master Service Agreement (the "MSA") for which two (2) invoices were submitted to Defendant.

4. The first invoice was paid by a check from Defendant which successfully cleared Defendant's bank.

5. With respect to the other invoice, Defendant tendered a check to Plaintiff in the sum of $44,777.00 as payment in full of said invoice; however, the check was dishonored by Defendant's bank.

6. No notice of defect, objection, request for repairs, changes, or back-charges, claims, disputes or other notices were given to Plaintiff by Defendant regarding the quality, timeliness or any other aspect of Plaintiff's performance of the services provided to Defendant and performance under the MSA and SOW.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on September 23, 2014

Raymond McIlwain, Vice President Contracts-General Counsel
Aveshka, Inc.

AVESHKA
discover

March 6, 2013

Ms. Sandra Garrett
Global Record Systems, LLC
2101 Gaither Rd., Suite 450
Rockville, MD 20850

Re: Termination of eCast Stabilization Task Order dated February 25, 2013.

Dear Sandi:

Per agreement between Global Record Systems, LLC (GRS) and Aveshka, Inc. (Aveshka), please accept this letter as notice of mutual termination of the eCast Stabilization Task Order dated February 25, 2013 under the Master Services Agreement dated February 25, 2013 (MSA) between GRS and Aveshka **effective 04 March 2013.**

All work prior to the stop work notice and mutual termination has been completed and invoiced in accordance with the MSA and Task Order. Please indicate your agreement by executing below.

Best regards,

Raymond McIlwain
Vice President, Contracts – General Counsel
Aveshka, Inc.

cc: Donald Rogers, Shulman, Rogers, Gandal, Pordy & Ecker, P.A.

Agreed & Accepted:

| | |
|---|---|
| Raymond McIlwain<br>Vice President, Contracts – General Counsel<br>Aveshka, Inc. | Sandra Garrett<br>President & CEO<br>Global Records Systems, LLC |

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| AVESHKA, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil Action No. 1:14-cv-1006 |
| | ) | GBL/IDD |
| GLOBAL RECORD SYSTEMS, LLC | ) | |
| | ) | |
| Defendant. | ) | |

**DECLARATION OF GIRISH JINDIA**

I, Girish Jindia, declare as follows:

1. I am the President of the Plaintiff, Aveshka, Inc. ("Aveshka") in this action and am over the age of 18 years.

2. Prior to the filing the Complaint in this action ("Complaint") by our counsel, I had a number of communications by telephone and by email with Sandra Garrett, who represented herself as the President and CEO of the Defendant, Global Record Systems, LLC regarding Defendant's non- payment of interest on the promissory note which is the subject of Count I of the Complaint, and regarding the tendered payment for services rendered by Plaintiff to Defendant, which is the subject of Count III of the Complaint, by check in the sum of $44,777.00 which was dishonored by Defendant's bank.

3. Throughout our conversations by phone and in emails, the sole reason for Ms. Garrett's reference to any face-to-face negotiations was her attempt to persuade me, on behalf of Aveshka, to exercise the conversion option in the Note (to "convert my [Defendant's] debt to equity"), to which I categorically refused and advised Ms. Garrett that Aveshka had no interest

in exercising the conversion option or changing the payment terms of the Note, and that our only interest was to be paid pursuant the terms of the Note. At no time did Ms. Garrett ever mention or even suggest that there was any claim (from Defendant against Plaintiff), dispute or controversy as to the services we provided to Defendant, nor did she mention that Defendant had any objection or complaint to the quality, timeliness or any other aspect of the services Aveshka provided to Defendant.

4. Although our communications did not resolve Defendant's non-payment or replacement of the dishonored check, the communications continued between us even after our counsel's final demand for payment of the note balance and the services, and the filing of the Complaint.

5. On August 9, 2014, I received the email attached hereto from Ms. Garrett. At no time did she state that there was a claim, dispute or controversy by and between Plaintiff and Defendant and she acknowledged that Defendant owed the money and intended to pay, if given additional time and Plaintiff's forbearance.

6. As to our response, counsel for Aveshka responded to counsel for Defendant and declined to cease or stay the litigation (see Declaration of Michael C. Montavon, Esquire).

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on September 23, 2014

Girish Jindia, President
Aveshka, Inc.

-------- Original message --------
From: Sandra Garrett <sgarrett@grs-emr.com>
Date: 08/09/2014 9:59 AM (GMT-05:00)
To: Girish Jindia <gjindia@aveshka.com>
Cc: Bruce Garrett <bgarrett@grs-cro.com>
Subject: FW: Follow-up

Girish,

When you invested in our Electronic Medical Records company we discussed your philosophy of honor and harmony. When we signed all agreements and you then came back to me and said that you would feel better if I would agree to provide personal protection I did not hesitate and responded to your concerns immediately. That is/was an act of honor. In May you asked that we find another investor to take out your position. We have been committed 24/7 to that quest and quite frankly at the cost of getting quickly funded. We have asked our pending investors to float a bridge loan to address our current indebtedness to Aveshka while considering strategies to take out Aveshka. They have agreed and as our lawyer, Mike Zuppone shared with your lawyer, they are preparing documents for a bridge by the end of next week. Suing us will cause termination of all funding efforts and therefore destroy months of hard work and due diligence and thus eliminate all chances of Aveshka being paid or growing the company. There are other honorable ways. I have been advised by counsel that you can hold off on prosecuting your claim with a stipulation that does not prejudice your claims and undermine at all your ultimate ability to obtain the relief you are pursuing in the lawsuit. We request that you hold on any further action in the lawsuit for the next 10 days and enter into stipulation that would suspend further collection efforts until the next interest payment date in exchange for the payment now of the past due interest, the penalty and the services fee, which we will fund with the bridge. Our goal is to pay off your obligation in full with the new capital were are raising. We hope you see this proposal as we see it, there is no downside to you and only upside you as you are paid off completely without the risks associated with foreclosure sale of illiquid assets that serve as the collateral for Aveshka's loan.

Sandra

---

**From:** Girish Jindia [mailto:gjindia@aveshka.com]
**Sent:** Monday, May 12, 2014 5:25 PM
**To:** Sandra Garrett
**Cc:** Kenneth M. Borow; Raymond Mcilwain; Bob Martin
**Subject:** RE: Follow-up

Sandra

As Ray & others have stated, I have "ZERO INTEREST" other than getting my Loan Repaid!!
I would be just as happy if you got another Investor to pay off my Loan such that " Another New Investor" can take an Equity Position.

Girish

---

**From:** Sandra Garrett [mailto:sgarrett@grs-emr.com]
**Sent:** Monday, May 12, 2014 4:25 PM
**To:** Girish Jindia
**Cc:** Kenneth M. Borow
**Subject:** FW: Follow-up

Dear Girish,

I understand that Ray and GRS counsel, Michael Zuppone, spoke on Wednesday regarding: (1) the status of our interest payment on the convertible note; and (2) Aveshka's interest in converting the note to equity. As Ray may have shared with you, the positioning of the convertible note is of significant concern to investors and in fact has prevented one such group, who completed due diligence, to actually close on the investment. We have spent a great deal of time considering a strategy that could work for all parties involved and would like to schedule a meeting (either in person or by phone) and discuss. Are you available on Wednesday afternoon? Let me know your thoughts.

sandi

******************************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

For additional information, please visit our website at www.paulhastings.com

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| **AVESHKA, INC.** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. 1:14-cv-1006 GBL/IDD** |
| | ) | |
| **GLOBAL RECORD SYSTEMS, LLC** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DECLARATION OF MICHAEL C. MONTAVON**

I, Michael C. Montavon, declare as follows:

1. I am co-counsel for Plaintiff Aveshka, Inc. ("Aveshka") in this action.

2. Prior to filing the Complaint in this action ("Complaint"), I had several communications with Michael L. Zuppone, Esq., a partner in the law firm of PAUL HASTINGS, who was representing the defendant, Global Record Systems, LLC ("GRS"). I believe that Mr. Zuppone works in the New York City office of PAUL HASTINGS.

2. On June 28, 2014, I transmitted to the addressees the formal demand letter that is Exhibit 6 to the Complaint in this action. Among other things, that letter demanded payment from GRS to Aveshka of the sums due for services rendered ($44,777), which sums are as set forth in Count III of the Complaint.

3. I received the below email dated July 9, 2014 from Mr. Zuppone:

**From:** "Zuppone, Michael" <MichaelZuppone@paulhastings.com>
**Subject:** **FW: Aveshka, Inc.**
**Date:** July 9, 2014 at 12:01:19 PM EDT
**To:** "mcm@montavonlaw.com" <mcm@montavonlaw.com>

Dear Mr. Montavon

Sandra Garrett forwarded this correspondence to my attention. Do you have time to discuss this matter with me.

Regards

Michael Zuppone

**Michael L. Zuppone** | **Partner** Paul Hastings LLP | 75 East 55th Street, New York, NY 10022 | Direct: +1.212.318.6906 |
| Mobile: +1.917.991.1140 | Main: +1.212.318.6000 | Fax: 1.212.230.7752 |
| email michaelzuppone@paulhastings.com | www.paulhastings.com

4. Between July 9, 2014 and the date I filed the Complaint, Mr. Zuppone and I communicated with each other by a series of telephone calls and emails regarding the subject matters set forth in my June 28 demand letter (Ex. 6 to the Complaint). We were not able to resolve the issues.

5. By email dated July 16, 2014 (copy attached), Mr. Zuppone transmitted to me the letter dated July 16, 2014 from Sandra Garrett (copy attached).

7. On July 30, 2014, I transmitted to the addressees the formal notice letter that is Exhibit 7 to the Complaint.

8. On August 7, 2014, I transmitted to the addressees the formal notice letter that is Exhibit 8 to the Complaint.

I declare, under penalty of perjury, that the foregoing is true and correct.

Executed on September 23, 2014

Michael C. Montavon

From: **Zuppone, Michael** MichaelZuppone@paulhastings.com
Subject: RE: Aveshka v. GRS/Garret
Date: July 16, 2014 at 5:18 PM
To: Michael Montavon mcm@montavonlaw.com

Mr. Montavon

Please find attached a letter from Global Records Systems which is intended to address the information you requested during our discussion yesterday. Let us know if Aveshka requires any further information.

Regards

Michael Zuppone

---

PAUL HASTINGS

**Michael L. Zuppone | Partner**
Paul Hastings LLP | 75 East 55th Street, New York, NY 10022 | Direct: +1.212.318.6906 |
| Mobile: +1.917.991.1140 | Main: +1.212.318.6000 | Fax: 1.212.230.7752 |
| email michaelzuppone@paulhastings.com | www.paulhastings.com

---

**From:** Michael Montavon [mailto:mcm@montavonlaw.com]
**Sent:** Wednesday, July 16, 2014 10:12 AM
**To:** Zuppone, Michael
**Subject:** Aveshka v. GRS/Garret

**NOTICE OF CONFIDENTIALITY**
**The following message and any attachment(s) may contain CONFIDENTIAL MATERIAL from the law firm of MICHAEL C. MONTAVON, P.C. Use or disclosure by anyone other than the intended recipient is prohibited. If you received this communication in error, please contact us by email or telephone (collect if necessary). Thank you.**
**MICHAEL C. MONTAVON, P.C.**
MCM@montavonlaw.com
**703.352.2550**

Dear Mr. Zuppone,

It is apparent to me that your clients are not giving this matter the attention it requires. I therefore am proceeding to protect my client's rights. Please advise by COB today (5:00 PM) whether your clients will honor any or all of the demands outlined in my letter dated June 28, 2014. Silence will be deemed rejection of each of those demands.

Michael Montavon

******************************************************************************
This message is sent by a law firm and may contain information that is privileged or confidential. If you received this transmission in error, please notify the sender by reply e-mail and delete the message and any attachments.

For additional information, please visit our website at www.paulhastings.com

July 16, 2014

Mr. Michael Montavon
P.O. Box 496
Clifton, VA 20124

Re: Global Record Systems, LLC

Dear Mr. Montavon:

As requested by counsel, we wish to provide the following report on the status of Global Record Systems and payment of its outstanding invoice for services as well as payment of its now delinquent interest payment.

**A. Background**:

As known to Aveshka, Global Record Systems created a convertible debt instrument in November, 2012 in the amount of $2.5MM. The funds borrowed were used in part to purchase an ongoing Electronic Medical Records company, create a database containing the patient records acquired in the purchase, design a new software architecture to convert the acquired EMR platform into a specialty product to be used in clinical research for the development, regulatory approval and commercialization of new pharmaceuticals, biotechnologies and medical devices. When we purchased the EMR company, many of the customers were not paying a monthly service fee; we instituted such fees in April, 2013. Initial investment funds supported ongoing operations until June, 2013 at which time the service fees enabled the Company to operate on a break-even basis. (The Company made its last borrowing of available funds from the Aveshka investment on May 5th, 2013.)

Key to the success of Global Record Systems is a collaboration agreement with the U.S. Food and Drug Administration. GRS began such discussions with the FDA on April 30, 2013 in a meeting for which Girish Jindia was in attendance. In January, 2014, Global Record Systems and the FDA signed a three year Research Collaboration Agreement. This agreement addresses the delivery of two distinct products and services; one related to EMR technologies and the other related to a patient safety, outcomes and adherence program.

Beginning in August, 2013, when it became apparent that the FDA would indeed collaborate with Global Record Systems, GRS's senior management began defining a strategy to raise additional capital to continue product development for the EMR platform. In January, 2014, after the FDA agreement was signed, the Company began extensive negotiations with an institutional investor to raise capital in the amount $6.0 MM. The Term Sheet was negotiated; however all negotiations ceased due to the explicit dissatisfaction with the "overhang" of the $2.5M convertible debt obligation due Aveshka. Part of these negotiations also focused on the Company's desire to increase the amount of investment capital in order to retire the Aveshka obligation. Although senior management was willing to take a significant "haircut" in valuation for the additional funds, the institutional investor was unwilling to enter into any discussion with Aveshka. As confirmed by counsel, the investors unequivocally stated that they would close on

the investment only if Aveshka agreed to convert their note into equity. When the identical circumstances were repeated with another institutional investor, we approached Aveshka with a plea to consider conversion to equity and thus increase their value in their original investment. Aveshka declined our offer as well as a request for a meeting to discuss these challenges with investors. Without this investment capital, the Company had to cease all development efforts to build a new EMR platform for clinical research.

**B. Current Status**

In May of 2014, in response to advice from several potential institutional investors, the executive management team elected to divide Global Record Systems' business into two business lines. One business line contains all of the EMR assets including the IP, database, customers, and designs for a new platform; and the second business line contains the designs and relationships developed for a different program, also contained within the FDA agreement, which relates to the collection of data, directly from patients, describing side effects they are experiencing from newly prescribed medications. This second program is unrelated to the electronic medical records business funded with the debt capital provided by Aveshka.

We have been in discussions with a new investment syndicate which has expressed interest in providing a total of $5.0 MM in investment capital of which at least $1.0M would be allocated to the EMR business line. Two of the three investors have already indicated an intention to proceed with the investment and are preparing term sheets. We are working diligently with the third investor. Should this third investor also commit to the investment, due diligence will proceed and we would expect to close the transaction in less than six weeks.

The separating of the business into two business lines is a condition of investment and addresses the "show stopper" of the overhang created by the Aveshka convertible note. The investment capital allocated to the EMR business line will be used to pay the overdue interest obligation and services invoice due Aveshka. GRS expects that the excess capital along with ongoing cash flow will allow GRS to service Aveshka's future interest payments and complete the platform development that was initiated last year. Our current cash flow covers our operating expenses. Once we have an operational demo model of the new EMR research platform, we can start generating new contracts with pharma customers which have healthy margins. This pivotal strategy will enable both business lines to benefit from the investment capital. As Aveshka knows, for nearly a year we have been actively engaged in funding the development of the EMR business so it can realize its full commercial potential and we can pursue monetization of the EMR records generated on the platform. Our management is ready to execute on the business plan, we just need more time to obtain the requisite capital.

We take our obligations seriously. Global Record Systems is committed to meeting all of its outstanding service and interest obligations due to Aveshka and will pay them immediately once the new capital is raised. We request that Aveshka forebear exercise of its remedies and grant us the time needed to raise the investment capital. This will allow GRS to increase revenues and pursue opportunities to monetize EMR records, sources of cash that we expect will be more than sufficient to pay off the principal on Aveshka's note when the obligation matures in the future.

We of course welcome the opportunity to discuss with your client any aspect of this letter.

Sincerely,

Sandra Garrett